NO. 07-10-00024-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 25, 2010

_____

ANTHONY RAY WILLIS, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY;

NO. 1152333D; HONORABLE WAYNE F. SALVANT, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Anthony Ray Willis, appeals his conviction for the offense of aggravated robbery[1] and subsequent sentence of 25 years confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ). We affirm.

_____

[1] See TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2003).

Factual and Procedural Background[2]

On March 30, 2009, Irma Martinez Eggers had completed work at the south campus of Tarrant County College. Eggers resided in Bedford but decided to spend the night at the Comfort Inn close to Tarrant County College because she had to drive early the next morning to Austin. The Comfort Inn shared a parking lot with a Denny's restaurant. After parking her car in the shared parking lot, Eggers went to Denny's to eat dinner. Upon completing her meal, Eggers returned to the car to gather her belongings and go to her room.

As Eggers began to retrieve her property from the trunk of her car, she noticed appellant pull the hood of his sweat shirt up onto his head and start toward her. As Eggers shut the trunk and looked up, appellant was standing close to her at the rear of the vehicle. Appellant told Eggers that he was hungry and asked for money. When Eggers replied that she did not have any cash, appellant stated, "See, I don't have a gun. Do you have a gun? Don't shoot me." While making this statement, appellant opened his jacket up took a tire iron out from beneath it, and said, "I have a tire iron. I don't want to hurt you." Eggers then reached into her purse and gave appellant $5.00.

Eggers then attempted to go toward the hotel but appellant stepped in front of her and began quizzing her about her personal life. Eggers continued to attempt to get to the front door of the hotel, and, as she reached the door and attempted to open it, appellant put his hand out and closed the door. Appellant then reached for Eggers and,

[2] Pursuant to the Texas Supreme Court's docket equalization efforts, this case was transferred to this Court from the 2nd Court of Appeals. See TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).

after a pause, took her hand and shook it and walked away.  Eggers went inside and had the clerk call 911 to report the incident.

The police arrived and got a description of appellant.  The officer taking the report called out the description for other officers in the area to be on the lookout for appellant.  A short time later, appellant was located in front of a grocery store about 200 yards from the hotel.  After being notified that appellant had been detained, Eggers was transported to the scene of the detention where she identified appellant as the perpetrator of the robbery.

Appellant was subsequently indicted for aggravated robbery.  The indictment filed against appellant alleges that appellant, during the course of committing theft of property, threatened or placed Eggers in fear of imminent bodily injury or death and that appellant used or exhibited a deadly weapon, to-wit: a crowbar or tire tool, that in the manner of its use or intended use was capable of causing death or serious bodily injury.  During the State's voir dire on the applicable law, the State discussed the indictment and the requirement for the use of a deadly weapon.  During this discussion, the State's attorney advised the jury that the law stated a deadly weapon is either a *per se* deadly weapon, like a gun or a firearm, or anything that in the manner of its use or intended use is capable of causing serious bodily injury or death.

At the conclusion of the trial, the trial court prepared its charge to the jury.  For purposes of this opinion, there are two portions of the court's charge that are of concern.  The first paragraph of concern is the definition of deadly weapon contained in paragraph 2 of the court's charge.  The trial court defined a deadly weapon as

a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use is capable of causing death or serious bodily injury.

The next portion of the court's charge that we are concerned with is the application paragraph, paragraph 5. In this paragraph, the court continued to define a deadly weapon as

threaten or place [Egger] in fear of imminent bodily injury or death, and the [appellant] used or exhibited a deadly weapon, to-wit: a crowbar or tire tool, that in the manner of its use was capable of causing death or serious bodily injury….

There were no objections by the State or appellant as to these portions of the court's charge. After argument, the jury began deliberations. Thereafter, the jury sent out the first of two notes to the judge. The first note to the trial court requested, "Can you please define manner of its use in relation to the tire tool in Section 5?" The trial court declined to answer the question and simply referred the jury to the existing charge. Before the answer of the trial court was given to the jury, the State requested that the trial court issue an amended paragraph 5 to read "to-wit, crowbar or tire tool that in the manner of its use or its intended use" so that the paragraph tracked the language of the indictment regarding the tire tool. At that time, the trial court refused to make this revision.

Subsequently, the jury sent out a second note that stated, "We can't come to a unanimous decision, what do we do?" In response to this note, the trial court revisited the subject matter of jury note 1 and determined that the court's charge in paragraph 5, the charging paragraph, was in error because it failed to contain the phrase "or intended

4

use" while describing the deadly weapon. Further, the trial court determined that the definition of a "deadly weapon" in paragraph 2 of the court's charge would also have to be amended to include "or intended use." The jury was brought back into the courtroom, and the trial court read the new paragraphs 2, "deadly weapon," and 5, "application paragraph," to include the phrase "or intended use." The jury returned to deliberations and convicted appellant of aggravated robbery.

Appellant contends that the evidence was legally and factually insufficient to support the judgment of conviction and, further, that the trial court committed reversible error by submitting a supplemental charge on the definition and application of "deadly weapon." Because we disagree with appellant, we affirm.

Sufficiency of the Evidence

Appellant's first two issues contend that the evidence was legally and factually insufficient to support appellant's conviction. As appellant challenges both the legal and factual sufficiency of the evidence, we are required to conduct an analysis of the legal sufficiency of the evidence first and, then, only if we find the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996). We will address these contentions in one section of this opinion.

Legal Sufficiency of the Evidence

Standard of Review

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We measure the legal sufficiency of the evidence against a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

Analysis

Under a hypothetically correct jury charge, the State had to prove that: 1) on or about March 30, 2009; 2) appellant; 3) intentionally or knowingly; 4) while in the course of committing theft; 5) with intent to obtain and maintain control over said property; 6) threatened or placed Eggers in fear of imminent bodily injury or death, 7) that appellant used or exhibited a deadly weapon, to-wit: a crowbar or tire tool; 8) that in the manner of its use or intended use was capable of causing serious bodily injury or death.

In the case before the Court, it is undisputed that appellant approached Eggers in a parking lot after dark. The record reflects that Eggers saw appellant coming toward

6

her and was frightened. Further, appellant requested money from Eggers, and, when he was advised that she had no cash, he began asking her if she had a gun. Appellant followed that statement up with a declaration that he did not have a gun but opened up his jacket and pulled out a tire iron stating that "I have a tire iron." Eggers testified that appellant then stated, "I don't want to hurt you." This statement resulted in Eggers reaching in her purse and giving appellant $5.00.

When we apply the test for legal sufficiency of the evidence to the hypothetically correct charge and these facts, we are of the opinion that the jury was acting rationally when it found appellant guilty beyond a reasonable doubt. See Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Appellant's first issue is overruled.

Factual Sufficiency of the Evidence

Standard of Review

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See id. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. Additionally, an appellate opinion addressing factual sufficiency

7

must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). However, when a defendant's version of the facts conflicts with other evidence, it is the jury's prerogative to judge the credibility of the evidence and to ascribe the weight to be given to the evidence. Jones v. State, 944 S.W.2d 642, 647-48 (Tex.Crim.App. 1996).

Appellant's contention is that the evidence that the jury heard was consistent with the appellant simply approaching Eggers as a panhandler looking for some money. Additionally, appellant contends that, through the testimony of his sister, he provided a logical alternate explanation for his possession of the tire tool. The sister testified that she had purchased a car that developed brake issues. Appellant was to help her by repairing the brakes, but the car did not have a jack nor a tire tool to use on a jack. Appellant offered to get a tire tool if his sister could find a jack. According to the sister, this all occurred in late March 2009. Further, appellant contends that there was factually insufficient evidence to prove that appellant ever used a deadly weapon. These are the contentions and evidence that appellant contends should undermine our confidence in the verdict of the jury. See Sims, 99 S.W.3d at 603.

Initially, we observe that, if the jury believed Eggers's testimony, there was sufficient evidence to prove that she was in fear of imminent bodily injury or death. Further, the evidence was not contradicted that appellant reached inside his jacket and came out with a tire tool within seconds after asking Eggers for money. Appellant contends that this action was simply an attempt to show Eggers that he did not have a gun. However, appellant followed that action with a statement. He either told Eggers

8

"Ma'am, I don't want to have to hurt you" or, "Now, I don't want to hurt you." The jury found by its verdict that appellant threatened Eggers after asking for money. Such a finding is consistent with the theory of aggravated robbery that the State put forth.

While conducting a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. Watson, 204 S.W.3d at 417. It is the jury's prerogative to judge the credibility of the evidence and to ascribe the weight to be given to the evidence. Jones, 944 S.W.2d at 647-48. Therefore, we cannot say that the verdict reached by the jury was not rationally justified. Watson, 204 S.W.3d at 415. Accordingly, the evidence was factually sufficient, and appellant's second issue is overruled.

Supplemental Charge

Appellant's third issue is that the trial court committed reversible error when the court gave the jury a supplemental charge regarding a deadly weapon by adding the words "or intended use." Appellant posits that article 36.16 of the Texas Criminal Code of Procedure mandates that the trial court erred by giving the additional instructions and charge. See TEX. CODE CRIM. PROC. ANN. art. 36.16 (Vernon 2006).[3] The applicable portion of article 36.16 provides as follows:

> After the argument begins no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury, or unless the judge shall, in his discretion, permit the introduction of

[3] Further reference to the Texas Code of Criminal Procedure shall be by reference to "art. ___" or "article ____."

9

> other testimony, and in the event of such further charge, the defendant, or his counsel shall have the right to present objections.

Id. According to appellant's theory, none of the exceptions outlined in the article apply. Therefore, appellant contends the trial court committed reversible error by giving the supplemental charge.

Under the article, a trial court is authorized to give a supplemental charge if 1) there is improper argument, 2) the jury requests such supplemental charge, or 3) if additional testimony is allowed. See id. Additionally, the Texas Court of Criminal Appeals has consistently held that a trial court may withdraw and correct its charge if convinced an erroneous charge has been given. See Roberson v. State, 113 S.W.3d 381, 384 (Tex.App.—Fort Worth 2003, pet. ref'd) (citing Smith v. State, 898 S.W.2d 838, 854-55 (Tex.Crim.App. 1995)).

A review of the jury's note 1 reveals that the jury was asking for additional instruction. In jury note 1, the jury asked, "Can you please define manner of its use in relation to the tire tool in Section 5?" When the jury sent the note out neither the definition of deadly weapon nor the application paragraph contained the phrase "or intended use" when describing the tire tool as a deadly weapon or defining deadly weapon. In accordance with the Roberson opinion, we view the first jury note as a request for additional instruction. See id. at 385. Additionally, we believe the State was correct when it requested the additional charge because the charge as submitted was erroneous. The Penal Code definition of a deadly weapon includes the omitted phrase. See TEX. PENAL CODE ANN. § 1.07(17)(B) (Vernon Supp. 2009). As submitted, the charge did not give the complete definition; therefore, such definition was erroneous.

10

See Smith, 898 S.W.2d at 854.  Further, the indictment included the absent clause, and the charging paragraph, paragraph 5, did not.  Again, the failure to track the indictment led to an incomplete charge which we view as being an erroneous charge.  Id. Therefore, because we find that the jury requested an addition to the charge and because the charge was erroneous as given, the trial court did not err when it elected to give the additional charge.  Appellant's third issue is overruled.

## Conclusion

Having overruled all of appellant's issues, the judgment of the trial court is affirmed.

Mackey K. Hancock
Justice

Do not publish.